```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

KIMBERLY MARIE POLES,

                          Plaintiff,      **14-cv-06622(MAT)**
                                          **DECISION AND ORDER**
        -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                          Defendant.
_____

## I.   Introduction

Represented by counsel, Kimberly Marie Poles ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings.

## II.  Procedural Status

Plaintiff protectively filed for SSI benefits on June 22, 2011, alleging disability since June 1, 2011. T.166-72.[1] After this application was denied, T.79-83, Plaintiff requested a hearing, which was held before administrative law judge Michael W. Devlin

---

[1] Citations to "T." refer to pages from the certified transcript of the administrative record, submitted by the Commissioner in connection with her answer to the complaint.

("the ALJ"). Plaintiff appeared with counsel and testified, as did vocational expert Julie Andrews ("the VE"). The ALJ issued an unfavorable decision on February 20, 2013. T.23-33. The Appeals Council denied review on September 2, 2014, making the ALJ's decision the final decision of the Commissioner. T.1-3. This timely action followed.

The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rule of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual summaries contained in the parties' briefs. The Court will discuss the record evidence in further detail below as necessary to the resolution of the parties' motions.

### III. Scope of Review

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). When conducting a substantial evidence review, a court's responsibility is "'to conduct a searching inquiry and to scrutinize the entire record, having in mind that the Social Security Act . . . is remedial in purpose.'" Monette v. Astrue, 269 F. App'x 109, 110 (2d Cir. 2008)

(unpublished opn.) (quoting McBrayer v. Secretary of Health & Human Servs., 712 F.2d 795, 798-99 (2d Cir. 1983)).

"The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)). In assessing a legal determination made by the Commissioner, "[the] court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal." Townley, 748 F.2d at 112 (internal quotation marks and citations omitted). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

**IV. Discussion**

    **A.   Denial of Fundamental Fairness Based on the ALJ's Bias Against Plaintiff**

"[A]n ALJ does not face a claimant such as [Plaintiff] in an adversarial posture." Peed v. Sullivan, 778 F. Supp. 1241, 1245 (E.D.N.Y. 1991) "Rather, the ALJ has a duty to ensure that the claimant receives 'a full hearing under the [Commissioner]'s

regulations and in accordance with the beneficent purpose of the Act.'" Id. (quoting Gold v. Sec'y of Health, Educ., and Welfare, 463 F.2d 38, 43 (2d Cir. 1972); citing Echevarria v. Sec'y of Health and Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)). When an ALJ confronts a claimant with a negative bias and without impartiality, he undermines the essentially judicial nature of an ALJ's duties. Peed, 778 F. Supp. at 1245.

Comments indicating the appearance of bias against Plaintiff based on her history of incarceration and drug use are evident throughout his decision. For instance, the ALJ begins his analysis as follows:

> At the outset, . . . there are a number of factors that negatively affect the claimant's credibility. The Claimant has a poor work history, which indicates she may not be consistently motivated to [sic] a part of the work force. Moreover, the claimant's criminal history, particularly her last offense involving forgery, indicates a willingness to fabricate.

T.28. Plaintiff also argues that the ALJ included unnecessary comments regarding her subjective complaints that evinced a negative bias toward her. The record substantiates this assertion. See, e.g. T.28 ("At the hearing, the claimant testified to a *fantastic* amount of problems.") (emphasis added); T.29 ("Despite testifying to not doing much with her days, she *amazingly* testified that she needs to take three to four rest periods per day.") (emphasis added).

Claimants seeking benefits indisputably are entitled to have a fair and impartial decision-maker, for "a basic element of due process is the right to an impartial and unbiased adjudication of a claim." Pronti v. Barnhart, 339 F. Supp.2d 480, 492 (W.D.N.Y. 2004) (citing Johnson v. Mississippi, 403 U.S. 212, 216 (1971)). "This aspect of due process applies equally in an administrative setting as it does in a judicial forum." Kendrick v. Sullivan, 784 F. Supp. 94, 102 (S.D.N.Y. 1992) (citing Schweiker v. McClure, 456 U.S. 188, 195 (1982) ("As this Court repeatedly has recognized, due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities.") (citation omitted)). Here, the Court finds that the ALJ assumed an improper adversarial role toward Plaintiff, calling into question the fundamental fairness of the proceeding. On this basis alone, remand is warranted. See McAninch v. Astrue, No. 09-CV-0969(MAT), 2011 WL 4744411, at *19 (W.D.N.Y. Oct. 6, 2011) ("The apparent hostility and bias of the ALJ's questionnaires, coupled with Plaintiff's absence from the ALJ's 'cross-examination' of the treating sources, seriously call into question the fundamental fairness of the proceeding. Reversal or remand is warranted on this basis alone.").

**B. Lack of Substantial Evidence Supporting Residual Functional Capacity Assessment due to ALJ's Errors in Reciting the Record**

Plaintiff argues that the ALJ's residual functional capacity ("RFC") assessment is legally erroneous and unsupported by

substantial evidence due to the ALJ's selective reading of the record and mischaracterization of the medical evidence. The Court agrees.

For example, the ALJ stated that "the claimant testified that arthritis, carpal tunnel syndrome, depression and mental impairments prevent her from working" but "most of these conditions are simply not found in the medical evidence." T.28. The ALJ's use of the term "most" without specifying which conditions and impairments he believed were "not found" in the record is so vague as to be nearly meaningless. The only condition as to which the Court has not found treatment records is carpal tunnel syndrome. However, the record is replete with treatment notes referencing Plaintiff's history of mental issues dating back to her childhood, and she has been diagnosed with multiple mental disorders that appear resistant to treatment. In addition, the record contains objective medical evidence documenting findings consistent with osteoarthritis.

With regard to Plaintiff's mental impairments, she has been variously diagnosed with psychotic disorder, anti-social disorder, anxiety disorder, depressive disorder, major depressive disorder with psychotic features, and schizophrenia. For instance, on August 17, 2011, consultative psychologist Dr. Christine Jean-Jacques noted that Plaintiff reported being hospitalized for psychiatric reasons on at least one occasion, though she did not remember when;

Plaintiff told Dr. Jean-Jacques that she had gone through "a lot of problems" as a child. T.285. At the time of the consultative examination ("CE"), Plaintiff was being seen by LMSW Erin Carlson bi-weekly at St. Mary's Mental Health Outpatient Center. Dr. Jean-Jacques diagnosed Plaintiff with major depressive disorder, severe, with psychotic features; anxiety disorder, not otherwise specified ("NOS"); and alcohol and cocaine dependence/abuse, in sustained remission. T.288. Dr. Jean-Jacques stated that the results of the CE "appear to be consistent with psychiatric problems that may significantly interfere with the claimant's ability to function on a daily basis." Id.

On September 28, 2011, psychiatrist Isis Bottros, M.D. performed a psychiatric medication review, noting that Plaintiff's jail records indicated that while incarcerated at Albion Correctional Facility for a year, she was treated for symptoms of depression, anxiety and psychosis, and prescribed Remeron (an antidepressant), Vistaril (a sedative sued to treat anxiety, tension, and agitation), and Risperdal (an atypical antipsychotic). Recently, Plaintiff had been started on Seroquel (an atypical antipsychotic) and trazodone (a tetracyclic antidepressant) which helped with her anxiety and auditory hallucinations, but not her depressed mood. On examination, Dr. Bottros noted that Plaintiff's mood was depressed, her thought process displayed paranoid ideation; and she heard voices commanding her and conversing with

her. Dr. Bottros added Zoloft (a selective serotonin reuptake inhibitor) for her depressive symptoms. See T.347-50.

On February 12, 2012, Plaintiff was seen by psychiatrist Chaya Bhuvaneswaran, M.D. for a psychiatric medication review. T.399-405. Dr. Bhuvaneswaran noted Plaintiff's diagnoses of psychotic disorder, NOS, and antisocial personality disorder. Plaintiff had "very limited" insight regarding the benefits of sustained evaluation and input by her treatment team; it was unclear to Dr. Bhuvaneswaran whether this was reflective of Plaintiff's personality or mood state. T.408.

On February 15, 2013, Plaintiff saw psychiatrist Gregory Seeger, M.D. at Genesee Mental Health Center for a psychiatric medication review. T.929-30. Dr. Seeger diagnosed Plaintiff with schizophrenia, paranoid type on Axis I, and deferred diagnosis on Axis II. He observed that Plaintiff was irritable and "highly anxious" with a labile affect, some psychomotor restlessness, and loud and rapid speech. She reported prominent auditory hallucinations and prominent paranoia and her judgment was impaired, although not to the point of being a danger to herself or others. As these excerpts from the medical records demonstrate, Plaintiff's depression and mental impairments are consistently substantiated by her treatment records. Yet, the ALJ concluded that "the only evidence that the claimant saw a psychiatrist is Dr. Reddy's note from June of 2012," T.30, which is inconsistent

with the foregoing treatment records from multiple psychiatrists. The omitted records from, inter alia, Drs. Bottros, Bhuvaneswaran, and Seeger undermine the ALJ's dubious assertion that Plaintiff did not think her mental health issues affected her functioning enough for her to "commit to treatment." Because these conclusions, which were key to the ALJ's rejection of Plaintiff's claim, are improperly based on a selective citation to, and mischaracterization of, the record, the Court finds that the ALJ's decision does not provide an adequate basis for meaningful judicial review, and is not supported by substantial evidence. See, e.g., Ericksson v. Commissioner of Soc. Sec., 557 F.3d 79, 82–84 (2d Cir. 2009) ("[T]he record demonstrates that the first ALJ improperly disregarded or mischaracterized evidence of Ericksson's continuing disability, and that the second ALJ awarded Ericksson benefits based, in substantial part, on a proper assessment of this very evidence.")).

With regard to Plaintiff's testimony that she suffered from arthritis, this also is supported by the record. Plaintiff has consistently sought treatment for chronic lumbar back pain. For instance, on February 9, 2010, Plaintiff reported radiating lower back pain and tingling to her hip. T.248. A lumbar x-ray showed mild disc space narrowing and marginal osteophyte[2] formation at L4-

---

[2]
"Osteophytes . . . are outgrowths of bone tissue that form around damaged joints. This bone growth is thought to be a compensatory response to bone and ligament damage, and is meant to restrict movement of the joint to

L5. T.237. On December 16, 2011, a repeat lumbar x-ray showed grade I spondylisthesis of L4 relative to L5 and degenerative joint disease at L4-L5. T.374.

"Courts in this Circuit have found reversible error where an ALJ arrives at an RFC assessment in reliance on a mischaracterization or misstatement of the record." Trumpower v. Colvin, No. 6:13-cv-6661(MAT), 2015 WL 162991, at *15 (W.D.N.Y. Jan. 13, 2015) (reversing where, inter alia, ALJ concluded claimant "did not exhibit delusional thought patterns or psychosis," which ignored "[treating psychiatrist]'s diagnosis of major depression with psychotic features and ignore[d] evidence in the records summarizing [claimant]'s psychiatric treatment, such as the repeated necessity of crisis intervention by [her therapist])" (citing Lugo v. Chater, 932 F.Supp. 497, 503 (S.D.N.Y. 1996) (ALJ bolstered his skepticism about claimant's reports of pain by observing that claimant had testified that he "does housework and uses public transportation"; however, district court found, ALJ's statement in this regard was "simply wrong" because claimant testified that he did not do housework and was unable to take public transportation by himself because of his vision); other citation omitted). Whether deliberately or inadvertently, the ALJ

---

protect from further damage. Joints that are prone to damage from overuse and arthritis, such as those in the spine and hands, are most likely to develop osteophytes. . . . "
http://www.med.umich.edu/lrc/coursepages/m1/anatomy2010/html/clinicalcases/osteophytosis/osteophytosis.html (last accessed Oct. 13, 2015).

here grossly mischaracterized the contents of the medical record and omitted substantial portions of Plaintiff's treatment notes from his consideration. Remand accordingly is required. E.g., Richardson v. Barnhart, 443 F.Supp.2d 411 (W.D.N.Y. 2006) (remanding where ALJ made "gross mischaracterization of the contents of the record").

In addition to committing multiple errors in characterizing the medical evidence, the ALJ arrived at internally inconsistent conclusions. For instance, in his psychiatric review technique, the ALJ found that Plaintiff had no restrictions with regard to activities of daily living, mild difficulties in social functioning, and moderate difficulties with regard to maintaining concentration, persistence, or pace. T.26. However, according to disability analyst Dr. Thomas Harding, whose opinion the ALJ accorded "significant" weight, T.31, Plaintiff has "moderate" limitations across all three domains. The ALJ's rationale in purporting to give significant weight to Dr. Harding's opinion, while rejecting the majority of that same opinion, cannot be gleaned from the decision, especially due to the multiple factual omissions and errors committed by the ALJ. This and other internal inconsistencies in the ALJ's decision provide an additional basis for remand.

### C. Erroneous Credibility Analysis

Plaintiff argues that ALJ's credibility analysis was legally erroneous and not based on substantial evidence. The Court agrees, as discussed further below.

In assessing a claimant's subjective complaints of disabling pain and other limitations, the ALJ first must determine whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce" the symptoms alleged. 20 C.F.R. § 416.929(b). Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's subjective contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry. E.g., Taylor v. Barnhart, 83 F. App'x 347, 350-51 (2d Cir. 2003) (summary order); see also 20 C.F.R. § 416.945; SSR 96-7p, 1996 WL 374186, at *2-*3 (S.S.A. July 2, 1996). When finding a claimant not entirely credible, the ALJ must include in his decision "specific reasons for the finding on credibility, supported by the evidence in the case record . . . ." SSR 96-7P, 1996 WL 374186, at *4. See also, e.g., Martone v. Apfel, 70 F. Supp.2d 145, 151 (N.D.N.Y. 1999) ("An ALJ who rejects subjective testimony 'must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision

is supported by substantial evidence.'") (quoting Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).

As an example in the present case, the ALJ relied heavily on his disbelief of Plaintiff's statement that she lived alone (despite having four children and a fiancé), in order to find her subjective complaints not credible. The record indicates, however, that Plaintiff's children all were adults; there is nothing unusual or suspicious about adult children not living with their mother. Likewise, there is nothing unusual or suspicious about engaged individuals living separately before marriage. If the ALJ found this testimony to be highly relevant and indicative of dissembling, he could have, and should have asked Plaintiff for clarification. See Cruz v. Astrue, 941 F. Supp.2d 483, 495 (S.D.N.Y. 2013) ("The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity.") (citations omitted). Moreover, this purported discrepancy is not of much significance given that it does not pertain to Plaintiff's statements about her disabling symptoms or limitations.

The ALJ also did not believe Plaintiff's reported history of psychotic disorder and anti-social personality disorder, stating that "there is no support for this history in the record." T.29.

Again, this is a mischaracterization of the record. For instance, LMSW Erin Carlson indicated that "collateral contacts" confirmed that Plaintiff had a "long history of depression and acting out behaviors. She was in and out of foster care and residential placements since the age of four. When she was older she was kicked out of several residential placements due to physical aggression and running away behaviors." T.276. If the ALJ felt this was inadequate, he could have, and should have, developed the record by requesting mental health records from Plaintiff's childhood and adolescence.

In sum, although the ALJ provided "specific" reasons for discounting Plaintiff's credibility, the Court cannot find that they were "legitimate" reasons because they are based on a misconstruction of the record. See Pierce v. Astrue, 946 F. Supp.2d 296, 309 (W.D.N.Y. 2013) (reversing where, inter alia, "[a]lthough the ALJ . . . provided 'specific' reasons for rejecting [the treating source]'s opinion, they were not 'legitimate' inasmuch as they were based on a misinterpretation of the medical record").

The ALJ also improperly relied on the so-called "sit and squirm" test to find that Plaintiff's subjective complaints of pain when sitting, T.28, were less than credible. See Aragon-Lemus, 280 F. Supp.2d 62, 70-71 (W.D.N.Y. 2003) (stating that while the ALJ's personal observations may be factored into the credibility assessment, see 20 C.F.R. § 416.929(c)(3), "such observations

should be assigned only 'limited weight'") (quoting Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)).

Although the ALJ has the discretion to weigh Plaintiff's testimony and other evidence in the record, his failure to consider certain testimony, and his misconstruction of other testimony, warrants a remand in this case. E.g., Branca v. Comm'r of Soc. Sec., 2013 WL 5274310, at *13 (E.D.N.Y. Sept. 18, 2013) (citing, inter alia, Correale-Englehart v. Astrue, 687 F. Supp.2d 396, 436 (S.D.N.Y. 2010) (ALJ's decision not supported by substantial evidence because, inter alia, the ALJ "misstated plaintiff's testimony" and "ignored" some of her testimony); Terry v. Astrue, 580 F.3d 471, 477 (7th Cir. 2009) (per curiam) (remanding case because, inter alia, "the ALJ repeatedly mischaracterized the record in identifying purported 'inconsistencies' in [claimant's] testimony")). Furthermore, as noted above, the ALJ's analysis clearly suggests a predisposition to disbelieve Plaintiff based solely on her criminal history and past substance abuse. See, e.g. Arrington v. Astrue, No. 09-CV-870 A(F), 2011 WL 3844172, at *13 (W.D.N.Y. Aug. 8, 2011) ("[A]lthough the ALJ may consider Plaintiff's history of bank robbery and substance abuse in determining Plaintiff's credibility, Williams v. Comm'r of Soc. Sec., 423 F. Supp.2d 77, 84 (W.D.N.Y. 2006), the ALJ is required to consider additional factors necessary to a proper credibility

assessment, but in this case failed to consider additional factors necessary to a proper credibility assessment.").

**V.   Conclusion**

For the foregoing reasons, the Court finds that the Commissioner's determination was erroneous as a matter of law and was not supported by substantial evidence. Accordingly, Defendant's Motion for Judgment on the Pleadings is denied, and Plaintiff's Motion for Judgment on the Pleadings is granted to the extent that the matter is remanded for further administrative proceedings consistent with this opinion. Specifically, the ALJ is directed to consider the entire record and to refrain from selectively citing or mischaracterizing the record and to re-evaluate Plaintiff's credibility in light of the appropriate regulatory factors. Since the Court is ordering remand, and there is currently no report from any of Plaintiff's treating psychiatrists, the ALJ is directed to take this opportunity to obtain a mental residual functional capacity assessment from Plaintiff's treating psychiatrist.

**SO ORDERED.**

S/Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   October 15, 2015
         Rochester, New York.